## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF MASSACHUSETTS

| | | |
|---|---|---|
| THE HUMANE SOCIETY OF THE UNITED STATES, 2100 L Street, NW Washington, DC 20037, | ) ) ) ) ) | Civ. No. |
| DEFENDERS OF WILDLIFE, 1130 17th Street, NW Washington, DC 20036, | ) ) ) ) | **COMPLAINT FOR DECLARATORY AND OTHER RELIEF** |
| CENTER FOR BIOLOGICAL DIVERSITY, 351 California Street, Suite 600 San Francisco, CA 94104, | ) ) ) ) ) | |
| WHALE AND DOLPHIN CONSERVATION SOCIETY (NORTH AMERICA), INC., 7 Nelson Street Plymouth, MA 02360-4044, | ) ) ) ) ) ) | |
| Plaintiffs, | ) ) | |
| v. | ) ) ) | |
| NATIONAL MARINE FISHERIES SERVICE, 1315 East-West Highway Silver Spring, MD 20910, | ) ) ) ) ) | |
| ERIC SCHWAAB, NOAA Assistant Administrator for Fisheries National Marine Fisheries Service 1315 East-West Highway Silver Spring, MD 20910, | ) ) ) ) ) ) ) | |
| GARY LOCKE, Secretary of Commerce U.S. Department of Commerce 14th Street & Constitution Ave., NW Washington, DC 20230, | ) ) ) ) ) | |

)
Defendants.                    )
)

## COMPLAINT FOR DECLARTORY AND OTHER RELIEF

1.      This case challenges the National Marine Fisheries Service's ("NMFS") failure to

comply with a clear statutory deadline under the Endangered Species Act ("ESA"), 16 U.S.C.

§§ 1531–1544, to timely protect the highly endangered North Atlantic right whale's habitat.

2.      The North Atlantic right whale (*Eubalaena glacialis*) is a large baleen whale that

migrates annually from its summer feeding grounds off the Northeast coast of the United States

to its winter breeding grounds off the Southeast coast.  Due to extensive whaling in the last

century and continued harm from fishing gear entanglement and ship strikes, the population

today numbers only about 345 individuals.  Without a significant turn toward recovery, scientists

predict the North Atlantic right whale may be extinct in less than 200 years.

3.      Protection of the species' critical habitat is essential for the survival and recovery

of this imperiled species.  Since 1994, three areas of the whale's Northeast feeding grounds and

Southeast breeding grounds have been designated as "critical habitat" for the species, and thus

protected under the ESA.

4.      Despite findings from NMFS's own scientists that this imperiled species' critical

habitat should be expanded in both the Northeast and Southeast, the agency has entirely failed to

respond to Plaintiffs' September 2009 petition to revise and expand designated critical habitat.

The ESA requires the agency to respond within 90 days of receiving such a petition, 16 U.S.C.

§ 1533(b)(3)(D)(i), yet 230 days later, the agency has failed to take action.

5.      The agency has not indicated its delay is due to any insufficiency in Plaintiffs'

petition.  Nor has the agency indicated that issuing a response within the prescribed 90-day

timeline was not practicable.  Indeed, the agency has not given any lawful reason for its failure to comply with the ESA's non-discretionary deadlines for responding to the petition.

6.      Rather, the agency apparently believes it somehow eliminated the North Atlantic right whale's critical habitat when it issued a 2008 rule that carved out the North Pacific right whale (*Eubalaena japonica*) from the pre-existing *Eubalaena glacialis* designation and changed the species' common name from the Northern right whale to the North Atlantic right whale, and therefore no designated critical habitat exists to revise.

7.      However, critical habitat for the North Atlantic right whale currently remains designated and legally effective under the ESA and its implementing regulations.

8.      The right whale critical habitat originally designated in 1994 remains codified at 50 C.F.R. § 226.203.  Moreover, the agency has acknowledged the existence and location of North Atlantic right whale critical habitat in numerous official documents and on its website.

9.      Further, the agency may only revise and delete critical habitat under the ESA after providing the public with notice and an opportunity to comment.  16 U.S.C. § 1533(b).  In this instance, the agency has neither provided notice of, nor completed, any such rulemaking concerning the right whale's Atlantic critical habitat.

10.     Moreover, even if NMFS did somehow delete or repeal existing critical habitat, NMFS nonetheless would be in violation of the ESA's requirement that the agency designate critical habitat within one year of proposing to list a species – a deadline the agency missed over two and a half years ago.  *Id.* § 1533(b)(6).

11.     By failing to respond to Plaintiffs' petition, NMFS has failed to provide appropriately designated critical habitat for the North Atlantic right whale in a timely and

otherwise lawful manner as mandated by the ESA, and is thereby depriving this critically

imperiled species of significant legal protections that are essential for its survival and recovery.

12.     Accordingly, Plaintiffs request that this Court order Defendants to immediately

comply with the ESA's non-discretionary timeline for responding to Plaintiffs' petition pursuant

to 16 U.S.C. § 1533(b)(3)(D)(i).

## JURISDICTION AND VENUE

13.     This Court has jurisdiction over this action pursuant to 28 U.S.C. § 1331, which

grants the district courts original jurisdiction over "all civil actions arising under the . . . laws . . .

of the United States."

14.     Plaintiffs provided a 60-day notice of intent to file this suit pursuant to the citizen

suit provision of the ESA, 16 U.S.C. § 1540(g)(2)(C), by letter to the Secretary of Commerce

and NMFS.  Plaintiffs sent the notice by certified mail and email on February 4, 2010.

15.     Venue in this Court is proper under 28 U.S.C. § 1391(e).

## PARTIES

16.     Plaintiff The Humane Society of the United States ("The HSUS") is a non-profit

organization headquartered in Washington, DC.  The HSUS is the nation's largest animal

protection organization, with over 11 million members and constituents, including approximately

3.8 million members who reside in the Eastern Seaboard states, and over 300,000 who reside in

the Commonwealth of Massachusetts.  The HSUS is committed to the goals of protecting,

conserving, and enhancing the nation's wildlife and wildlands, and fostering the humane

treatment of all animals.  In furtherance of these goals and objectives, The HSUS and its

members have demonstrated a strong interest in the conservation and humane treatment of

marine mammals, including the North Atlantic right whale.  For example, The HSUS has served

as a member of the Atlantic Large Whale Take Reduction Team since its inception in 1996, actively participating in efforts to protect the North Atlantic right whale and other large whales from entanglement in fishing gear.

17.     The HSUS brings this action on behalf of itself and its members, who regularly engage in educational, recreational, and scientific activities involving the North Atlantic right whale.  Many HSUS members live in close proximity to and frequently visit various portions of the Atlantic coast and regularly view or attempt to view right whales in their natural habitat. HSUS members regularly whale watch both from the shore and from boats, including commercial whale watching vessels.  HSUS members plan to continue to observe this species in the future.  Further, HSUS and its members regularly review agency proposals affecting the North Atlantic right whale, review agency data and documentation provided to the public, and participate by commenting and advising the agency in its actions.

18.     Plaintiff Defenders of Wildlife ("Defenders") is a national non-profit organization dedicated to the protection and restoration of all native wild animals and plants in their natural communities.  Based in Washington, D.C., and with offices spanning from Florida to Alaska, Defenders has nearly one million members and supporters across the nation, including 158,927 members in states along the Atlantic Coast where right whales live, feed, breed, and migrate. Defenders is a leader in the conservation community's efforts to protect and recover the critically endangered North Atlantic right whale.

19.     Defenders brings this action on behalf of its members, many of whom enjoy observing, photographing, and appreciating North Atlantic right whales in the wild, and studying the species in its natural habitats, including those designated as critical habitat in 1994 and those petitioned for inclusion as critical habitat in 2009.  Defenders' members regularly engage in

these activities in various locations along the Atlantic Coast and will continue to do so in the future.  The interests of Defenders' members in viewing, studying, and enjoying North Atlantic right whales are harmed by Defendants' failure to protect all habitat areas that are essential to the species' survival and recovery.

20.     Plaintiff Center for Biological Diversity ("the Center") is a non-profit corporation dedicated to the preservation, protection, and restoration of biodiversity, native species, ecosystems, public lands, and waters.  Through research, advocacy, industry oversight, and enforcement of environmental laws, the Center works to establish vital protections for imperiled species and habitat in general, and the North Atlantic right whale in particular.  The Center's Oceans Program aims to protect marine ecosystems in United States and international waters, and has a long-standing interest in the conservation of both North Pacific and North Atlantic right whales.  The Center has over 42,000 members throughout the United States and the world, 11,550 of whom reside in the states along the Atlantic coast, where the North Atlantic right whale feeds, breeds, and migrates.

21.     The Center has members and staff who reside in and have visited areas along the East Coast where North Atlantic right whales are known to occur in order to enjoy, recreate, observe, and attempt to observe the whales.  Those members and staff have concrete plans to continue to travel to and recreate in areas where they can enjoy the habitat and right whales.  The Center's members and staff use the areas where North Atlantic right whales are known to occur for wildlife observation, research, nature photography, aesthetic enjoyment, recreational, educational, and other activities.  Moreover, the Center and its members actively work on behalf of right whale conservation by reviewing scientific data, petitioning NMFS for increased

protections, and monitoring and commenting on activities that have potential to harm right whales.

22.     Plaintiff Whale and Dolphin Conservation Society (North America), Inc. ("WDCS") is the world's largest organization dedicated solely to the protection of whales, dolphins, porpoises and their environment.  WDCS has offices in the U.K., U.S., Australia and Germany with over 70,000 supporters world-wide, including 5,000 in the U.S.  WDCS and its supporters have worked extensively to preserve the critically imperiled North Atlantic right whale and its habitat.

23.     WDCS brings this action on behalf of its members, many of whom enjoy observing, photographing, and appreciating North Atlantic right whales in the wild, and studying the species in its natural habitats.  WDCS works with commercial whale watching companies through its Whale SENSE program.  As a founding partner of Whale SENSE, each year, WDCS naturalists and interns educate more than one million passengers on board commercial whale watching vessels throughout the Northeast Region of the United States (Maine to Virginia) regarding the plight of the North Atlantic right whale.  WDCS members and interns also regularly whale watch from land and water.  Additionally, a WDCS staff member chairs the Right Whale Consortium's Education Team.  Further, WDCS members regularly comment on Federal Register notices regarding the protection and conservation of North Atlantic right whales.

24.     Plaintiffs' various members' interests in observing, studying, and appreciating these species are harmed by Defendants' failure to comply with the ESA.  NMFS has acknowledged that protecting the right whale's habitat is one of the key priorities for recovery of the species.  Defendants' violations are threatening the already-fragile existence of endangered

North Atlantic right whales by undermining and denying much-needed protections for essential right whale habitat.  These violations and their contribution to the continued stalled recovery of North Atlantic right whales harm and will continue to harm Plaintiffs' and their members' interests in the conservation of this species.  Further, Defendants' failure to comply with the ESA-mandated process for revising right whale critical habitat also harms and will continue to harm Plaintiffs' and their members' procedural interests.

25.    Plaintiffs' and their members' injuries will be redressed by an order of this Court compelling NMFS to comply with the ESA's procedural requirements and to otherwise insure that appropriate critical habitat is designated for this species.  Activities that are likely to adversely affect the right whale's habitat are occurring and would be subject to scrutiny under the ESA if critical habitat were appropriately designated.  In addition, because critical habitat must provide for the recovery of the species, it would provide an extra measure of protection over that afforded to the species itself.

26.    Defendant National Marine Fisheries Service ("NMFS") is the agency within the U.S. Department of Commerce's National Oceanic and Atmospheric Administration to which the Secretary of Commerce has delegated the authority to conserve most endangered and threatened marine species pursuant to the ESA.

27.    Defendant Eric Schwaab is the Assistant Administrator for Fisheries at NMFS and has responsibility for implementing and fulfilling the agency's duties under the ESA.  50 C.F.R. § 222.101(a).  Mr. Schwaab is sued in his official capacity.

28.    Defendant Gary Locke is the Secretary of Commerce and has ultimate responsibility for the programs of NMFS.  Secretary Locke is sued in his official capacity.

29.     Collectively, Defendants named in paragraphs 26 through 28 shall be referred to as "Defendants" or "NMFS" in this Complaint.

## STATUTORY BACKGROUND

### A.  Endangered Species Act

30.     Recognizing that certain species "have been so depleted in numbers that they are in danger of or threatened with extinction," Congress enacted the ESA in order "to provide a means whereby the ecosystems upon which endangered and threatened species depend may be conserved, [and] to provide a program for the conservation of such endangered species and threatened species."  16 U.S.C. § 1531(a)(2), (b).

31.     The ESA defines conservation as "the use of all methods and procedures which are necessary to bring any endangered species or threatened species to the point at which the measures provided pursuant to [the ESA] are no longer necessary."  *Id.* § 1532(3).  Accordingly, the ultimate goal of the ESA is not only to prevent endangered and threatened species from reaching extinction, but also to recover these species to the point where they no longer require ESA protection.

32.     Under the ESA, a species is "endangered" if it is "in danger of extinction throughout all or a significant portion of its range."  *Id.* § 1532(6).  A species is "threatened" if it is "likely to become an endangered species within the foreseeable future."  *Id.* § 1532(20).

33.     To accomplish the goals of the Act, including the goal of protecting habitat, the ESA requires the Secretary to designate areas of critical habitat for each threatened or endangered species.  *Id.* § 1533(a)(3)(A)(i).  "Critical habitat" includes areas occupied by the species "on which . . . those physical or biological features (I) essential to the conservation of the

species and (II) which may require special management considerations or protection" are found. *Id.* § 1532(5)(A).

34.     Congress recognized that the protection of habitat is essential to the recovery of listed species, stating that:

> classifying a species as endangered or threatened is only the first step in insuring
> its survival.  Of equal or more importance is the determination of the habitat
> necessary for that species' continued existence . . . If the protection of endangered
> and threatened species depends in large measure on the preservation of the
> species' habitat, then the ultimate effectiveness of the Endangered Species Act
> will depend on the designation of critical habitat.

H. REP. NO. 94-887 at 3 (1976).

35.     Once designated, critical habitat provides important protections for imperiled species beyond those provided by listing alone.  The ESA requires each federal agency to insure that its actions will not "result in the destruction or adverse modification" of designated critical habitat.  16 U.S.C. § 1536(a)(2).  If any federal agency action may adversely affect designated critical habitat, the agency must formally consult regarding the action's effects.  50 C.F.R. § 402.14(a).  If the action will result in adverse modification of critical habitat, NMFS must set forth reasonable and prudent alternatives to the action.  *Id.* § 402.14(h)(3).

36.     The ESA provides detailed procedures and timelines for listing a species as endangered or threatened and for designating critical habitat.  Specifically, within one year of proposing to list a species, NMFS must issue a final determination, either listing the species, withdrawing the proposal, or finding that there is "substantial disagreement" among scientists regarding the data and the agency requires six additional months to consider the listing.  16 U.S.C. § 1533(b)(6)(A)(i), (B)(i); 50 C.F.R. § 424.17(a)(1).

37.     The Secretary must designate critical habitat "concurrently" with its final decision to list the species, unless the agency finds that critical habitat "is not then determinable."  *Id.*

§ 1533(b)(6)(C)(ii).  The Secretary may only find critical habitat "not determinable" if the agency lacks sufficient information regarding the species' biological needs or the impacts of the designation.  50 C.F.R. § 424.12(a)(2).

38.     Even if the agency deems critical habitat to be "not determinable" at the time it issues its final listing decision, the agency must, within one year, "publish a final regulation . . . designating, to the maximum extent prudent," critical habitat based on "such data available at that time."  16 U.S.C. § 1533(b)(6)(C); 50 C.F.R. § 424.17(b)(2).  The agency may only find critical habitat "not prudent" if critical habitat is "not . . . beneficial" to the species.  *Id.* § 424.12(a)(1).  In total, NMFS must designate critical habitat within one year of proposing to list a species, unless the agency makes specific findings that delay is necessary and publishes those findings by certain deadlines.

39.     Any interested person may file a petition with the Secretary to add or remove a species from the ESA list or to revise critical habitat.  16 U.S.C. § 1533(b)(3)(A), (D); 50 C.F.R. § 424.14(b), (c).  The Secretary must "[t]o the maximum extent practicable, within 90 days [of] receiving the petition . . . make a finding as to whether the petition presents substantial scientific information indicating that the petitioned action may be warranted."  16 U.S.C. § 1533(b)(3)(D)(i); 50 C.F.R. § 424.14(c)(1).  "Substantial information" is that "amount of information that would lead a reasonable person to believe that the measure proposed in the petition may be warranted."  *Id.* § 424.14(b)(1).

40.     If the Secretary makes a positive 90-day finding, the Secretary must review the species' status, and "[w]ithin 12 months after receiving [the] petition, . . . determine how he intends to proceed with the requested revision" and publish that determination in the Federal Register.  16 U.S.C. § 1533(b)(3)(D)(ii); 50 C.F.R. § 424.14(c)(3).

41.     NMFS must designate critical habitat "on the basis of the best scientific data available and after taking into consideration the economic impact . . . and any other relevant impact, of specifying any particular area as critical habitat."  16 U.S.C. § 1533(b)(2).

42.     NMFS may also remove a species from the list (i.e., delist a species) or delete or revise critical habitat, but only after following stringent procedures.  *Id.* § 1533(b)(5); 50 C.F.R. § 424.10.  Specifically, NMFS must publish a proposed rule providing the regulatory text, a summary of data upon which the proposal is based, and an explanation of how the data supports the proposed rule, as well as an opportunity for public comment and a hearing.  16 U.S.C. § 1533(b)(5)(A)(i); 50 C.F.R. § 424.16.  Within one year of the proposed rule to delist a species or revise or delete critical habitat, NMFS must publish either a final rule, a finding that the revision will not be made, or a notice extending the period by "not more than 6 moths" due to disagreement by scientists regarding the sufficiency or accuracy of data supporting the rule.  16 U.S.C. § 1533(b)(6); 50 C.F.R. § 424.17(a)(1).  The final rule must include the regulatory text, a summary of comments received, and "a summary . . . of the data on which [the] regulation is based and . . . the relationship of such data to [the] regulation."  16 U.S.C. § 1533(b)(8); 50 C.F.R. § 424.18(a).

43.     The ESA authorizes any citizen to commence suit "against the Secretary where there is alleged failure of the Secretary to perform any act or duty under section 4 which is not discretionary."  16 U.S.C. § 1540(g)(1)(C).

## B.  Administrative Procedure Act

44.     The APA provides general rules governing the issuance of proposed and final regulations by federal agencies.  5 U.S.C. §§ 551–706.  Absent narrow circumstances, a federal agency must publish a notice and allow public comment on any proposed "rule making."  *Id.*

§ 553(b), (c).  The APA defines a "rule making" to mean the "process for formulating,

amending, or repealing a rule."  *Id.* § 551(5).

45.     Regulations promulgated to carry out the ESA must be issued in compliance with

APA rulemaking procedures, except as expressly provided for by the ESA.  16 U.S.C.

§ 1533(b)(4); 5 U.S.C. § 553.

46.     The APA authorizes a court to "(1) compel agency action unlawfully withheld or

unreasonably delayed; and (2) hold unlawful and set aside agency action, findings, and

conclusions found to be . . . arbitrary, capricious, an abuse of discretion, or otherwise not in

accordance with law."  *Id.* § 706(1), (2)(A).

## FACTUAL BACKGROUND

47.     The North Atlantic right whale is a critically endangered species, with a

population of only approximately 345 individuals.  The whales are distributed along the East

Coast of the United States from Canada south to Florida.

48.     Although the right whale has been listed as endangered since 1970, the species

has not recovered.  NMFS has identified entanglement in commercial fishing gear and ship

strikes as the two primary anthropogenic factors retarding growth and recovery of the North

Atlantic right whale.  In its recovery plan for the North Atlantic right whale, NMFS also named

"habitat degradation, noise, contaminants, and climate and ecosystem change" as other potential

threats to the species, and prioritized the identification and protection of right whale habitat as

essential to recovery.  NMFS, *Recovery Plan for the North Atlantic Right Whale (Eubalaena

glacialis) Revision* at v (2004).

49.     NMFS has concluded that the "loss of even a single individual may contribute to the extinction of the species" and "if current trends continue, the population could go extinct in less than 200 years."  69 Fed. Reg. 30,857, 30,858 (June 1, 2004).

50.     North Atlantic right whales rely on specific areas off the U.S. East Coast for their survival.  The species' only known calving ground lies in the nearshore waters off the southeastern United States.  Right whales migrate from these winter calving grounds through waters off the mid-Atlantic states north to rich feeding and nursery areas off the New England coast.  In all three of these areas, whales are likely to encounter ship traffic, commercial fishing gear, and noise from military exercises, among other hazards.

**A.     North Atlantic Right Whale Listing, Nomenclature, and Critical Habitat Designation**

51.     Because common names for species change over time and can vary by region, the accepted practice among biologists is to refer to a species by its Latin, or scientific, name.  Latin names consist of a genus (in the case of the North Atlantic right whale, *Eubalaena*) and species (for North Atlantic right whale, *glacialis*).  Scientists rely on scientific names as the most definitive way to identify and name species.

52.     In 1970, the right whale was listed as an endangered species under the ESA's predecessor statute under the name "Right whales (*Eubalaena* spp.)."  35 Fed. Reg. 18,319, 18,320 (Dec. 2, 1970).  The listing covered all species within the genus *Eubalaena*, which at the time, covered the two known species of right whales – the northern right whale (*Eubalaena glacialis*) and the southern right whale (*Eubalaena australis*).  71 Fed. Reg. 77,704, 77,706 (Dec. 27, 2006).

53.     In 1991, NMFS recognized in its original recovery plan for the northern right

whale that the species (*E. glacialis*), as then defined, existed in both the Atlantic and Pacific

Oceans and recommended critical habitat be designated in both oceans.

54.     In 1994, NMFS designated critical habitat for the "Northern Right Whale

(*Eubalaena glacialis*)" in the Atlantic Ocean.  59 Fed. Reg. 28,793 (June 3, 1994).  NMFS

included three areas: (1) the Great South Channel, a bathymetric feature in the southern Gulf of

Maine, (2) Cape Cod Bay off of Massachusetts, and (3) an area in the Southeast off the coast of

Georgia and northern Florida.  *Id.*

55.     In 2003, NMFS issued a rule amending the nomenclature for the northern right

whale to reflect scientific consensus that northern right whales in the Atlantic and in the Pacific

Oceans are distinct species.  68 Fed. Reg. 17,560 (Apr. 10, 2003).  NMFS explained that,

historically, right whales were considered to include two species, "*Eubalaena glacialis* in the

northern hemisphere (Pacific and Atlantic Ocean basins), and *Eubalaena australis* in the

southern hemisphere," but recent genetic analysis had demonstrated that right whales in the

North Pacific were in fact a separate species from those in the North Atlantic.  *Id.*

56.     Accordingly, in what the agency referred to as a "technical revision," NMFS

amended the listing regulation to "chang[e] the species name of the northern right whale as

follows: the North Atlantic right whale, *Eubalaena glacialis*, and the North Pacific right whale,

*Eubalaena japonica*."  *Id.*  As a result, the endangered species list named three species of right

whales: the North Atlantic right whale (*E. glacialis*), North Pacific right whale (*E. japonica*), and

the Southern right whale (*E. australis*).  *Id.* at 17,562.  The agency did not provide an

opportunity for comment on the changes, explaining that technical amendments did "not change

the listing status of these species" because "all right whales will remain listed . . . and are subject

to the same protections as existed prior to these changes." *Id.* at 17,561.  The agency noted that it had managed the three right whale species as "discrete entities" for over a decade.  *Id.*

57.     In 2005, NMFS withdrew its technical revision and reinstated the former listing and nomenclature for the species (the northern right whale, *Eubalaena glacialis*), finding that the 2003 technical revision did not comport with the ESA's listing procedures.  70 Fed. Reg. 1830, 1831 (Jan. 11, 2005).  NMFS clarified that, despite the changes, "all right whales are endangered."  *Id.*

58.     In 2006, in response to litigation brought by the Center, NMFS designated critical habitat for the northern right whale in the Pacific.  71 Fed. Reg. 38,277 (July 6, 2006). Accordingly, under the heading "Critical habitat for northern right whale (Eubalaena glacialis)," NMFS listed critical habitat areas in both the North Atlantic Ocean and the North Pacific Ocean. *Id.* at 38,293; 50 C.F.R. § 226.203 (2006).

59.      On December 27, 2006, NMFS formally proposed to list the North Pacific right whale (*E. japonica*) as a new endangered species.  *See* 71 Fed. Reg. 77,694 (Dec. 27, 2006).  In a separate rulemaking, NMFS acknowledged that "*E. glacialis* [had been] listed" since the 1970's under the name "*Eubalaena* spp.," but nonetheless proposed to list the "North Atlantic right whale (*E. glacialis*)" as a separate endangered species.  *Id.* at 77,706-07.  In its discussion of current conservation measures applicable to the North Atlantic right whale, NMFS noted the importance of ESA Section 7 consultation regarding potential impacts to critical habitat from federal actions.  *Id.* at 77,714.

60.     At no time did NMFS propose to "delist" any species, and the species "*Eubalaena glacialis*" has remained a listed species since the 1970s.

61.     In October of 2007, NMFS proposed to designate critical habitat for the North Pacific right whale.  72 Fed. Reg. 61,089 (Oct. 29, 2007).  Specifically, NMFS proposed to designate the same Pacific Ocean critical habitat designated for the northern right whale (*E. glacialis*) as critical habitat for the North Pacific right whale (*E. japonica*).  *Id.* at 61,105.

62.     In the same notice, NMFS proposed regulatory text that specified "Critical habitat is designated for right whales in the North Atlantic . . . as described in paragraph[ ] (a) . . . of this section" and, in paragraph (a), replaced the common name "northern right whale" with "North Atlantic right whale (*Eubalaena glacialis*)."  *Id.*  The change made clear that the already-designated critical habitat for the northern right whale in the North Atlantic Ocean was indeed the North Atlantic right whale's critical habitat.  *Id.*

63.     NMFS issued a final rule listing the North Atlantic right whale (*E. glacialis*) and the North Pacific right whale (*E. japonica*) as separate endangered species on March 6, 2008.  73 Fed. Reg. 12,024 (Mar. 6, 2008).  While the final listing rule did not address any critical habitat designations or determinations, it confirmed that the North Atlantic right whale was being listed under the same scientific name as the northern right whale, *Eubalaena glacialis*.

64.     In April 2008, NMFS adopted the critical habitat it had proposed for the North Pacific right whale, creating an entirely new regulatory section at 50 C.F.R. § 226.215.  73 Fed. Reg. 19,000, 19,011 (Apr. 8, 2008).  At the same time, NMFS removed the Pacific Ocean habitat previously designated for the "northern right whale" under § 226.203.  *Id.*  The agency made no changes to the Atlantic Ocean critical habitat areas listed in § 226.203 and those areas remain codified today.  50 C.F.R. § 226.203 (2010).

65.     However, in contrast with its proposed rule, NMFS's final rule amended § 226.203 by deleting both the common name "North Atlantic right whale" and the scientific name

"(*Eubalaena glacialis*)" from the critical habitat designation, leaving only the heading "Critical

habitat for northern right whales" and the Atlantic Ocean habitat originally designated in 1994.

NMFS provided no explanation for reverting to the outdated common name or dropping the

scientific name in the final rule.

66.     On numerous occasions since the agency listed the North Atlantic right whale as a

separate species in 2008, NMFS has stated that critical habitat for the North Atlantic right whale

exists and is the same Atlantic Ocean critical habitat originally designated in 1994.  For example,

in numerous biological opinions, NMFS has described the North Atlantic right whale's critical

habitat in the Atlantic Ocean and evaluated various projects' impacts on that habitat.  NMFS,

*Biological Opinion on the U.S. Navy's Undersea Warfare Training Range* at 93-94 (July 28,

2009); *see also* NMFS, *Biological Opinion on the Cape Wind Energy Project* at 11 (Nov. 13,

2008).  Further, as of at least February1, 2010, NMFS's own website described and provided

maps of the North Atlantic right whale's designated critical habitat in the Atlantic.

**B.      Plaintiffs' Petition to Expand Critical Habitat**

67.     In 2007, NMFS issued a Technical Memorandum defining the areas in the

Southeast that constitute the calving grounds for the North Atlantic right whale.  *See* Garrison,

L.P., *Defining the North Atlantic Right Whale Calving Habitat in the Southeastern United States:*

*An Application of a Habitat Model*, NOAA Technical Memorandum NOAA NMFS-SEFSC-553

(2007).  NMFS scientists concluded that "the currently defined critical habitat should be

expanded to include areas further offshore and generally further north off the coast of Georgia,"

in order to protect right whale calving grounds.  *Id.* at 26.

68.     In 2008, NMFS scientists published a paper describing "essential" North Atlantic

right whale habitat, including foraging grounds in the Northeast.  *See* Pace R.M., Merrick R.L.,

*Northwest Atlantic Ocean Habitats Important to the Conservation of North Atlantic Right Whales (Eubalaena glacialis)*, Northeast Fish Sci Cent Ref Doc. 08-07 (2008).  The scientists concluded the essential foraging area "is much more expansive than that within the two current critical habitat areas" already designated in the Northeast.  *Id.*

69.     Based on NMFS's own conclusions in the studies above, as well as several other scientific studies, on September 16, 2009, Plaintiffs formally petitioned NMFS to expand the North Atlantic right whale's critical habitat in three areas: (1) the Northeast, to include the entire Gulf of Maine and its associated bays, (2) the Southeast from the northern border of South Carolina through central Florida, and (3) a migratory corridor stretching between the Northeast and Southeast critical habitat areas.

70.     NMFS acknowledged that it received the petition on October 1, 2009.

71.     On April 19, 2010, Plaintiffs met with NMFS staff regarding the agency's failure to respond to the petition.  Plaintiffs understand and allege, upon information and belief, that the agency has, in some instances, adopted the position that no critical habitat currently exists for the North Atlantic right whale.

72.     Plaintiffs have received no answer to their petition from the agency.

## CLAIM FOR RELIEF

## Violations of the ESA and APA

### (Failure to Respond to Petition to Revise Critical Habitat)

73.     Plaintiffs re-allege and incorporate, as if fully set forth herein, each and every allegation in the preceding paragraphs of this complaint.

74.     NMFS violated and continues to violate the ESA by failing to respond to
Plaintiffs' petition to revise critical habitat within the 90-day time frame mandated by the ESA.
16 U.S.C. §§ 1533(b)(3)(D)(i); 1540(g)(1)(C); 50 C.F.R. § 424.14(c)(1).

75.     NMFS's failure to carry out the non-discretionary duty in section 1533 of the
ESA constitutes an agency action "unlawfully withheld or unreasonably delayed" within the
meaning of the APA.  5 U.S.C. § 706(1).

## PRAYER FOR RELIEF

For the reasons stated above, Plaintiffs respectfully request that the Court grant the
following relief:

1.  Declare that NMFS is in violation of its nondiscretionary duty under the ESA, 16
    U.S.C. § 1533(b), and has unlawfully withheld or unreasonably delayed a
    nondiscretionary agency action by failing to respond to Plaintiffs' petition to revise
    North Atlantic right whale critical habitat within the time frame dictated by the ESA;

2.  Compel NMFS to respond to Plaintiffs' petition to revise North Atlantic right whale
    critical habitat and publish proposed and final rules as appropriate under the ESA in
    the Federal Register by certain dates;

3.  Issue an order awarding Plaintiffs their costs of litigation, including reasonable
    attorney fees as provided by the ESA, 16 U.S.C. § 1540(g)(4); and

4.  Provide such other relief as the Court deems just and proper.

DATED:  May 25, 2010

Respectfully Submitted,


  /s/ Kimberly D. Ockene
Kimberly D. Ockene
MA BBO #638097
Senior Attorney, Cruelty, Companion Animals & Research
The Humane Society of the United States
131 Windermere Rd.
Auburndale, MA  02466
(617) 467-5842
kockene@humanesociety.org

*Counsel for Plaintiffs*